[Cite as *State v. Blanken*, 2014-Ohio-5361.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

STATE OF OHIO                               :

    Plaintiff-Appellee                :          C.A. CASE NO.    2012 CA 73

v.                                         :          T.C. NO.    12CR545

ALBERT BLANKEN                             :          (Criminal appeal from
                                                        Common Pleas Court)

    Defendant-Appellant               :

                                           :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the ____5th____ day of ____December____, 2014.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Assistant Prosecuting Attorney, 50 E. Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

TYLER D. STARLINE, Atty. Reg. No. 0078552, 260 N. Detroit Street, Xenia, Ohio 45385
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} This matter is before the Court on the Notice of Appeal of Albert Blanken, filed October 19, 2012. Blanken was convicted, on October 18, 2012, after a trial by jury, on one count of having weapons while under disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree. He received a three-year sentence.

{¶ 2} On April 8, 2013, appointed counsel for Blanken filed a brief pursuant to *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). This Court granted Blanken 60 days to file a pro se brief, and he did so, asserting six assignments of error. On March 12, 2014, this Court issued a Decision determining that the "*Anders* brief filed by counsel is sparse at best." This Court rejected the *Anders* brief and appointed new counsel to represent Blanken in this appeal.

{¶ 3} The record before us reflects that on October 15, 2012, Blanken appeared before the trial court, and the prosecutor recited the terms of a plea offer from the State, namely that in exchange for Blanken's guilty plea to the sole count in the indictment, "the State would agree to a minimum prison sentence of nine months in the Ohio State Penitentiary." Blanken indicated his understanding of the offer on the record, and he advised the court that he wanted to proceed to trial.

{¶ 4} On the first day of trial, in the absence of the jury, the following exchange occurred:

> THE COURT: * * * I understand that you wanted to place something on the record?
>
> MR. MURPHY: Yes, Your honor. * * * Just so the Court is up to speed. Last night about 4:30 I received a voice mail from Mrs. Smith from

the prosecutor's office disclosing a witness, a detective. I forgot who it w[a]s.

MS. SMITH: Former Deputy Ken Nichols.

MR. MURPHY: Ken Nichols. And he was going to testify as to the prior conviction because this is a weapons under disability charge. One of the allegations in the indictment is that my client had a prior conviction for trafficking in marijuana charge back in 1991. They indicated that there was no social security number or something like that so they couldn't just use the clerk's office.

Again, I guess the bottom line is because this is going to go to trial, I thought it was incumbent upon me to object to the late disclosure. Again, like I said I got a message last night about 4:30 that this was going to occur in the trial that was scheduled for this morning.

I know that the State has indicated that it would simply ask the Court not to start the trial until later this afternoon to allow me the opportunity to talk to this ex-deputy.

The only problem I have with that is, Your Honor, that starting a trial so late, I have my son that has a doctor's appointment tonight at 6:30. I know that Court doesn't have to take that into consideration, but that would be the only problem I would have starting the trial so late.

I would like to at least have the option or try to get there. I don't have anybody else to take him. But the State did last night disclose a

witness, and we are scheduled for trial this morning.

THE COURT: Did the State want to speak to that?

MS. SMITH: Mr. Murphy is correct. I did contact him yesterday late afternoon and advised him as to an additional witness, former Deputy Kenneth Nichols. Ordinarily, I'm accustomed to proving a prior conviction by having the Clerk of Courts come in and testify as to personal identifiers located inside their criminal case file that is kept in the clerk's office.

I spoke with the deputy clerk yesterday to confirm that those personal identifiers were present, and she advised that they had not yet pulled the criminal case file.

She obtained that criminal case file at lunch time over the noon hour and contacted me shortly thereafter and advised me that there were no personal identifiers, at which point then we tracked down our criminal case file and found in one, the former deputy that had worked on that criminal case and confirmed with that former deputy that he recalled the events of that and asked if he would be able to testify to link the defendant here today as the defendant in the 1991 case file.

The State believes that the defendant would suffer no prejudice by this late disclosure, given the fact he was fully advised that he would be - - that the State would be prepared - - intended to prove that he had that prior criminal conviction from 1991. The means by which we were proving that prior have slightly changed, but nevertheless, he was advised that we would

be proving that prior as part of the elements of this case.

And again, I advised Mr. Murphy that, if necessary, the State would ask for a brief continuance, if necessary, to allow Mr. Murphy to question Mr. Nichols this morning to prepare for trial; and unfortunately. (Sic) Mr. Nichols had a doctor's appointment at 9:00 this morning.

It's my understanding we have contacted him, and he's now finished with that and on his way here. It may not be even necessary - - It could be a brief delay of a half an hour to start the trial so that Mr. Murphy can talk to former Deputy Nichols.

THE COURT: All right. We'll proceed with jury selection and prior to opening statements, I'll give defense counsel ample opportunity to talk with former Deputy Nichols.

* * *

{¶ 5} At the start of the trial, Ronald Vincent testified that he is the "Clerk of Common Pleas Court for Clark County, Ohio, Second District Court of Appeals for Clark County, and the Clark County title department." Vincent stated that in the course of his employment, he is the official "[c]ustodian of all the records," including "[c]ivil, criminal, domestic, titles, automobile title, boat title." Vincent identified, as State's Exhibit 3, a certified copy of "a conviction entry captioned State of Ohio, Plaintiff, vs Albert Blanken, Jr., defendant. Case # 91-CR-227, judgment entry of conviction." Vincent testified that the defendant therein "pled guilty to the charge of trafficking in marijuana, Ohio Revised Code 2925.03, a felony of the fourth degree."

{¶ 6} On cross-examination, Vincent stated that he has been the clerk of courts for

36 years. He stated that he or his deputy clerks are usually not in the courtroom at the time a convicted defendant is sentenced. He stated that State's Exhibit 3 would have been brought to the clerk's office by either the defense attorney or the prosecutor. He testified that State's Exhibit 3 does not identify a date of birth or a social security number for Blanken therein, and when asked if he could confirm that the Albert Blanken identified as the Defendant in Case # 91-CR-227 was the same Albert Blanken appearing in court in the instant matter, Vincent responded, "I have no knowledge."

{¶ 7}    Kenneth Nichols testified that he retired from the Clark County Sheriff's Department in 1998, having been employed there for 19 years. He testified that in the course of his employment, he "worked the jail. I was assigned to uniform patrol. I was a detective and also worked in the drug unit." Nichols testified that during the period of time between 1990 and 1991, he was assigned to the drug task force as a detective. Nichols stated that he recalled investigating Blanken during that time, and that in the course of his investigation, he had multiple opportunities to observe Blanken. Nichols stated that prior to testifying, he reviewed the case file for case number 1991 CR 227 at the prosecutor's request. The following exchange occurred:

Q. Did that document match at least to some extent that you can recall, did that match your investigation of Albert Blanken in 1991?

A. Yes, it did.

Q. Do you also have an independent recollection about your investigation of Mr. Blanken in 1991?

A. Not from that actual incident there, but there were other incidents

that I was involved with Mr. Blanken.

Q. Do you recall what Albert Blanken looked like in 1991?

A. Curly red hair, blue eyes.

Q. Do you know how old he would have been in 1991?

A. Probably in his early twenties.

Q. During the course of today you have had an opportunity to observe this defendant seated here today, correct?

A. Yes, ma'am.

Q. Prior to him coming in the courtroom?

A. Yes, ma'am.

Q. Do you think you've had a fair opportunity to observe this defendant?

A. Yes.

Q. Do you recognize him?

A. Yes, I do.

Q. Is this the same Albert Blanken seated here today as the same Albert Blanken that you investigated in that 1991 case?

A. Yes, ma'am.

Q. Is he of the same race?

A. Yes, ma'am.

Q. Same height?

A. Yes.

Q. Same build?

A. Yes.  He had a little more hair back then.

Q. But he had red hair?

A. Yes. He did.

* * *

{¶ 8}    The following exchange occurred on cross-examination after defense counsel confirmed the time period of Nichols' employment with the Sheriff's office:

Q. It sounds like you had a lot of different jobs?

A. Yes.

Q. Worked in the jail, road duty, detective, drug task force?

A. Yes.

Q. So I imagine you did a lot of cases?

A. Yes.

Q. And the State asked you about a case that happened twenty-one years ago?

A. Yes.

Q.  It is your testimony under oath that you're positive that the individual seated at the table with me is the same individual that you investigated back in 1991?

A. Yes, sir.

Q. Even though it was twenty-one years ago?

A. Yes.

Q. Do you remember all your cases that well?

A. Some I do, some I don't. It depends on how many times you're introduced to the subject.

Q. * * * The State asked you if you reviewed some case file before you testified today?

A. Yes.

Q. When did you do that?

A. I actually looked at it yesterday and then this morning.

Q. That was the prosecutor's case file?

A. I believe so.

Q. Now, if you had not looked at that, would you still be able to testify to that?

A. As far as if that's Mr. Blanken, yes.

* * *

{¶ 9}    On redirect, the following exchange occurred:

Q.  Mr. Nichols, you and I had a brief conversation yesterday, correct?

A. Yes, ma'am.

Q. And you provided details not in my case file, correct?

A. Yes.

{¶ 10}    Sergeant Mike Young testified that he is a "first shift uniform patrol supervisor for the Sheriff's office" in Clark County. He stated that he "supervise[s] all the

officers that work that 7-3 slot. Manage the daily operations, their tasks, responsibilities, manage resources during that time." Young stated that he was advised of a domestic incident at 2690 Cleve Avenue on July 27, 2012, and that based upon the information he received, he felt it was necessary to respond to the scene with additional officers. Young stated that he was the first officer to respond to the scene. Young testified that upon arrival, he "started managing the officers that responded and what our position would be and also instructed them - - some of them have tactical helmets and some of them grabbed their shotguns. We had assigned different weapons to different officers and their positioning." Young stated that he believed that there were five deputies at the scene. Young stated that he was taking particular precautions based upon the information he had received about the incident, namely that the suspect had a firearm. The following exchange occurred:

> Q. You had particular information that required this behavior?
>
> A. Correct.
>
> Q. Did you have a particular individual you were looking for that
>
> day?
>
> A. Yes.
>
> Q. Did he have a name?
>
> A. Yes.
>
> Q. What was the name?
>
> A. Albert Blanken.

{¶ 11} Young stated that when he arrived at the scene, he believed that the suspect was inside the residence at 2690 Cleve Avenue, but that he then heard officers in the back of

the home call out that Blanken was in the backyard. Young testified that he heard the officers order Blanken to the ground. According to Young, he proceeded to the back yard, and Blanken was on the ground when he arrived. He stated that the other officers had their guns drawn, and that he holstered his weapon and placed Blanken in handcuffs. The following exchange occurred:

Q. After you placed him in handcuffs what happened next?

A. We had him stand up. We helped him up and I walked him over to a - - There was a car at the rear of their house and walked him over there. We got a good pat-down to make sure that he didn't have any weapons, knives or anything on him and then I advised him of his Miranda Rights.

Q. What happened after you advised him of his Miranda Rights?

A. He told me he was, you know, I asked him if he understood his rights. He told me that he did. And I asked him if he had any firearms. He said he did. I asked him if he owned a shotgun at which time he told me he did and he told us the location of the shotgun.

Q. What did he tell you was the location of that shotgun?

A. It was in the shed.

* * *

Q. After he advised you that that shotgun was located in the shed, what happened next?

A. We asked if he would consent to us to search. He gave us verbal consent, which the officers checked in the shed to see what other property or

any other weapons was in there.

Q. Do you recall specifically which deputy went to go search the shed?

A. I believe it was Deputy Hobbs.

* * *

Q. * * * Walk us through. What happens after Hobbs comes out of the shed with the firearm?

A. It was in a soft case. We opened up the case. Deputy Hobbs opened up the case, and I asked Mr. Blanken if that was his shotgun.

Q. What did he advise?

A. He said it was.

Q. Did he make any other statements with respect to the shotgun at that time?

A. I asked him why he would have a shotgun because by
prior knowledge on the case that he was - - that he had a
felony record which prevented him from being in possession
of a firearm. I asked him why he     would have a firearm.

Q. Did he give you an answer to that?

A. He told me that he was aware but that was his shotgun. He didn't go into details as far as why he had it. He just acknowledged that he did own the shotgun.

* * *

Q. If you had a suspect who admitted ownership of a firearm, would you have submitted that for fingerprints?

A. In this particular case, no, I would not.

{¶ 12} At disposition, the court ordered that Blanken "be sentenced to three years in the Ohio State Penitentiary * * *." Blanken's "Amended Judgment Entry of Conviction/Warrant for Removal" provides in part as follows:

IT IS HEREBY ORDERED that the defendant be sentenced to three (3) years in the Ohio State Penitentiary * * *

* * *

Defendant is ORDERED conveyed to the Ohio Penitentiary, c/o the Orient Correctional Facility, Orient, Ohio. * * *

{¶ 13} Counsel for Blanken asserts two assignments of error herein. His first assigned error is as follows:

"THE TRIAL COURT PREJUDICIALLY ERRED BY PERMITTING FORMER DEPUTY SHERIFF KEN NICHOLS TO TESTIFY IN VIOLATION OF THE CRIMINAL DISCOVERY RULES."

{¶ 14} Crim.R. 16(A) provides:

This rule is to provide all parties in a criminal case with the information necessary for a full and fair adjudication of the facts, to protect the integrity of the justice system and the rights of defendants, and to protect the well-being of witnesses, victims, and society at large. All duties and remedies are subject to a standard of due diligence, apply to the defense and

the prosecution equally, and are intended to be reciprocal.

{¶ 15} Crim.R 16(I) provides: "Each party shall provide to opposing counsel a written witness list, including names and addresses of any witness it intends to call in its case-in-chief, or reasonably anticipates calling in rebuttal or surrebuttal." Crim.R. 16(L) provides:

> * * * If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, * * * the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances.

{¶ 16} As this Court noted in *State v.Shah*, 2d Dist. Montgomery No. 25855 , 2014-Ohio-1449, ¶ 24:

> "Appellate courts review allegations of noncompliance with criminal discovery rules under the abuse of discretion standard." *State v. Adams*, 7th Dist. Mahoning No. 00 CA 211, 2006-Ohio-1761, ¶ 40, citing *State v. Parson*, 6 Ohio St.3d 442, 445, 453 N.E.2d 689 (1983). Recently, the Supreme Court of Ohio noted that:
>
> > In *Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689, we established three factors that should govern a trial court's exercise of discretion in imposing a sanction for a discovery violation committed by the prosecution. The three *Parson*

factors a judge should consider are (1) whether the failure to disclose was a willful violation of Crim.R. 16, (2) whether foreknowledge of the undisclosed material would have benefit[t]ed the accused in the preparation of a defense, and (3) whether the accused was prejudiced. *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 35, citing *Parson* at syllabus.

{¶ 17} We conclude that an abuse of discretion is not demonstrated herein. The prosecutor learned that she could not prove Blanken's prior conviction by means of the testimony of an employee of the clerk's office after noon on the day before trial, because it lacked identifying facts such as defendant's date of birth and social security number. After she ascertained that Nichols was available to prove the prior conviction later that same afternoon, she so advised defense counsel, and we cannot conclude that the prosecutor's delay in disclosing Nichols as a witness was a willful violation of Crim. R. 16. The indictment specifically provides that Blanken was "convicted of Trafficking in Marijuana in Clark County Common Pleas case no. 91-CR-0227, in violation of Ohio Revised Code Section 2923.13(A)(3)," the Bill of Particulars provides that "Albert Blanken has previously been convicted of Trafficking in Marijuana in Clark County Court of Common Pleas Case No. 91-CR-0227," thus Blanken was on notice that the State intended to prove this element to obtain a conviction. Finally, we cannot say that prejudice is established. The court indicated that it would allow defense counsel "ample opportunity to talk with former Deputy Nichols" prior to opening statements, the record reflects that a recess was taken between jury

selection and opening statements, and Blanken did not thereafter object to proceeding or request a continuance. Finally, the record reflects that defense counsel was able to thoroughly cross-examine Nichols regarding Blanken [1]. For the foregoing reasons, Appellate counsel's first assigned error is overruled.

{¶ 18}  Appellate counsel's second assigned error is as follows:

"THE TRIAL COURT PREJUDICIALLY ERRED BY SENTENCING APPELLANT BLANKEN TO A SPECIFIC PRISON INSTITUTION IN VIOLATION OF OHIO LAW."

{¶ 19}  Blanken asserts that "[b]y specifically ordering - orally and in writing - the particular prison institution at which Appellant Blanken should serve his three-year sentence, the Trial Court impermissibly encroached on the jurisdiction and authority of the Department of Rehabilitation and Corrections.  In doing so, the Trial Court clearly violated the separation-of-powers doctrine, which is constitutional error."  The State responds that "* * * the Executive Branch was not encroached upon by the Judicial Branch.  The language used by the trial court is a colloquial term used to describe the Department of Rehabilitation and Corrections.  The trial court and the State of Ohio both understand that the court is not permitted to explicitly send a defendant to a specific prison in this state."

{¶ 20}  As the Ohio Supreme Court noted in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753:

---

[1] Significantly, the record reflects that Blanken admitted to Young and other responding officers that the shotgun belonged to him, and he admitted to Young that he was aware that he was prohibited from possession/ownership of a firearm due to a prior felony conviction (disability).

The first, and defining, principle of a free constitutional government is the separation of powers. *Evans v. State* (Del.2005), 872 A.2d 539, 543. In *Kilbourn v. Thompson* (1880), 103 U.S. 168, 190-191, 26 L.Ed. 377, the United States Supreme Court stated:

> "It is believed to be one of the chief merits of the American system of written constitutional law, that all the powers intrusted to government, whether State or national, are divided into the three grand departments, the executive, the legislative, and the judicial. That the functions appropriate to each of these branches of government shall be vested in a separate body of public servants, and that the perfection of the system requires that the lines which separate and divide these departments shall be broadly and clearly defined. It is also essential to the successful working of this system that the persons intrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other."

As this court has observed with regard to our own state system of government: "While Ohio, unlike other jurisdictions, does not have a constitutional provision specifying the concept of separation of powers, this

doctrine is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." S. *Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 158-159, 28 OBR 250, 503 N.E.2d 136. It "represents the constitutional diffusion of power within our tripartite government. The doctrine was a deliberate design to secure liberty by simultaneously fostering autonomy and comity, as well as interdependence and independence, among the three branches." *Norwood v. Horney*, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 114.

*Id.*, ¶ 39-42.

{¶ 21} Crim.R. 32(C) provides that a "judgment of conviction shall set forth the fact of conviction and the sentence." R.C. 2929.14 sets forth the prison terms that a court may impose at sentencing for a felony, and R.C. 2929.01(AA) defines prison as "a residential facility used for the confinement of convicted felony offenders that is *under the control of the department of rehabilitation and correction * * *.*" We conclude, as the State concedes, that "the court is not permitted to explicitly send a defendant to a specific prison in this state."

{¶ 22} Accordingly, we hereby modify Blanken's "Amended Judgment Entry of Conviction/Warrant to Convey" to provide as follows:

IT IS HEREBY ORDERED that the defendant be sentenced to three years in the Ohio Department of Rehabilitation and Correction.

* * *

Defendant is ORDERED conveyed to the Ohio Department of Rehabilitation and Correction, c/o the Correctional Reception Center, Orient, Ohio * * *.

{¶ 23} Blanken's second assigned error is sustained, and the amended judgment of the trial court is affirmed as modified.

. . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Ryan A. Saunders
Tyler D. Starline
Hon. Douglas M. Rastatter