[Cite as *State v. Gaus*, 2016-Ohio-4886.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

STATE OF OHIO                          :
                                       :
        Plaintiff-Appellee             :       C.A. CASE NO. 2015-CA-28
                                       :
v.                                     :       T.C. NO. 15CR77
                                       :
HEATHER D. GAUS                        :       (Criminal Appeal from
                                       :        Common Pleas Court)
        Defendant-Appellant            :
                                       :
                    . . . . . . . . . .

**O P I N I O N**

Rendered on the ___8th___ day of ____July____, 2016.

. . . . . . . . . .

JANE A. NAPIER, Atty. Reg. No. 0061426, Assistant Prosecuting Attorney, 200 N. Main Street, Urbana, Ohio 43078
        Attorney for Plaintiff-Appellee

MARCY VONDERWELL, Atty. Reg. No. 0078311, 120 W. Second Street, Suite 333, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Heather Dawn Gaus pled guilty in the Champaign County Court of Common Pleas to one count of theft by deception, a felony of the fifth degree. She was sentenced to twelve months of imprisonment, the maximum sentence, was fined $250, and was

ordered to pay restitution totaling $3,266.96 and court costs. Gaus appeals, raising several issues related to her sentence. For the following reasons, the judgment of the trial court will be affirmed, as modified.

## I.    Facts and Procedural History

{¶ 2} The facts alleged in the indictment were that, from approximately January 1, 2013 through December 31, 2013, Gaus solicited and received donations from various groups and individuals based on her false representations that she had cancer. At the sentencing hearing, the parties discussed that Gaus had collected these funds through a benefit for which flyers had been posted and through a website. Throughout the period set forth in the indictment, Gaus's children, as well as close family and friends, were led to believe that Gaus was receiving cancer treatments, including surgeries; she also shaved her head so that she would appear to be undergoing chemotherapy. She told her children that she expected to die. Gaus claimed that she "told a lie" seeking her boyfriend's attention, and then "didn't know how to stop it," and that it "kept snowballing into bigger and bigger lies."

{¶ 3}   Gaus was age 34 at the time of sentencing; she shared parenting of her four children, ages 13, 11, 9, and 7, with her former husband. The older children had received some counseling at school since learning that their mother did not actually have cancer and, at the time of the sentencing hearing, the family was in the process of setting up counseling for all of the children.

{¶ 4}   On May 7, 2015, Gaus was indicted on one count of theft by deception and one count of receiving stolen property, both felonies of the fifth degree. On June 9, 2015, she pled guilty to theft, in exchange for which the count of receiving stolen property was

dismissed; the State also agreed to recommend community control. A presentence investigation was conducted, which revealed, among other things, that she had no criminal record except for one conviction for driving under suspension, and that her community supervision risk assessment was low. A sentencing hearing was held on July 14, 2015, and sentence was imposed as described above.

{¶ 5} Gaus raises three assignments of error related to her sentencing, which we will address out of order.

## II. Designation of a Specific Correctional Institution

{¶ 6} In her first assignment of error, Gaus asserts that the trial court erred in imposing "Imprisonment for twelve (12) months to the Ohio Reformatory for Women." She argues that a trial court is not permitted to designate a specific prison because, in doing so, it infringes on the authority of the Ohio Department of Rehabilitation and Corrections (ODRC), which is part of the executive (rather than the judicial) branch of government, and violates the principle of separation of power. The State agrees with Gaus that a trial court is not permitted to send a defendant to a specific prison, because the authority to do so is vested with the ODRC, but it points out that there is only one facility in Ohio through which women are processed – the Ohio Reformatory for Women. Thus, the State construes the trial court's statement as relating to Gaus's *processing*, and not as determinative of her ultimate placement.

{¶ 7} In *State v. Blanken*, 2d Dist. Clark No. 2012 CA 73, 2014-Ohio-5361, we were also confronted with a case in which a trial court seemed to order that a sentence be served at a particular facility. We recognized the important concept of separation of powers and the fact that a trial court "is not permitted to explicitly send a defendant to a

specific prison in this state." *Id.* at ¶ 21. However, we corrected the error by modifying the defendant's judgment to provide that he was sentenced to the ODRC; we did not vacate the judgment of conviction and remand to the trial court for further proceedings, as Gaus requests. The same remedy is appropriate here.

{¶ 8} Gaus's first assignment of error is sustained. The judgment of the trial court will be amended to impose "Imprisonment of twelve (12) months in the Ohio Department of Rehabilitation and Corrections," with the understanding that Gaus may be processed by the ODRC through the Ohio Reformatory for Women.

### III. The Defendant's Children as "Victims" of the Offense

{¶ 9} In her third assignment of error, Gaus argues that the trial court erred in viewing her children as "victims" of her crimes and in allowing the children's aunt, who was also a "non-victim," to "testify" at the sentencing hearing about the effect of the crime on the children.

{¶ 10} The court designated the aunt as "a victim representative" for Gaus's four children at the sentencing hearing. The aunt's comments consisted of Gaus's not having put her children's needs above her own, "faking" her cancer and doctor's appointments while her children were home "crying, scared, and grieving," and the aunt's view that the children needed to be protected from their mother.

{¶ 11} In its comments at the sentencing hearing, the trial court stated that

The Court * * *, in looking at the purposes and principles [of sentencing,] not only considers this as a theft case. But the court also takes into account that the theft had an effect on the children. And in the Court's view, it's the effect on the children, the longevity of the deception,

and the nature of the deception, and the age of the victims [children] that really control this case.

This case is more than a theft case. This is a failure to abide by your parental responsibilities to the detriment of your children. * * *

The court also stated that the children were victims "under the statutory definition of deception in [R.C.] 2913.01(A)," set forth in the chapter on theft and fraud offenses, even though they had not suffered monetary damage.

{¶ 12} Gaus argues that the court had no basis for identifying the children as "victims" of her crime. It is true that the children were not victims in the sense that they did not suffer any economic loss as a result of Gaus's actions and could not be paid restitution. R.C. 2929.18(A)(1) provides that restitution may be imposed with payment "to the victim of the offender's crime or any survivor of the victim." R.C. 2930.01(H)(1) defines a victim as "[a] person who is identified as the victim of a crime or specified delinquent act in a police report or in a complaint, indictment, or information that charges the commission of a crime." Gaus's children did not satisfy the definition of "victim" for purposes of restitution. *See also State v. Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672, ¶ 112, reversed on other grounds, 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888 (holding that insurance companies and banks are not proper third-party payees of restitution for offenses involving damage to property or insurance or credit card fraud, because they do not satisfy statutory definitions of "victims"); *State v. Hunter*, 2d Dist. Montgomery No. 25521, 2013-Ohio-3759 (finding that a fire department is not a "victim" of an arson for purposes of restitution); *State v. Stump*, 4th Dist. Athens No. 13CA10, 2014-Ohio-1487, ¶ 11 (bank is not the "victim" for purposes of restitution when

money is stolen from a customer's account).

{¶ 13}  The trial court's statement that the children were victims under R.C. 2913.01(A)'s definition of "deception" apparently refers to the statutory wording that deception "means knowingly deceiving another or causing another to be deceived by any false or misleading representation."  There is no question that the children were deceived, but the crime was obtaining money from another by deception, not deceiving the children or the community.

{¶ 14}  The trial court's references to the children as "victims" did not relate to restitution, but to the adverse effect that Gaus's false claim that she was dying had on the children during the several months that she perpetuated this deception.  R.C. 2929.12 sets forth factors to be considered in felony sentencing; some of these factors are specifically enumerated, but the statute also provides that the court may "consider any other factors that are relevant to achieving [the] purposes and principles of sentencing." Thus, while the trial court's references to the children as "victims" were technically incorrect, we recognize that it could have reasonably concluded that the harm to Gaus's children and the manner in which they were deceived as part of the crime were relevant considerations for purposes of sentencing.

{¶ 15}  Further, in light of its concern over the hardship inflicted on the children, the trial court did not abuse its discretion in allowing the children's aunt to speak about the effect on the children and the counseling they were receiving, rather than requiring the minor children to speak directly.

{¶ 16}  The third assignment of error is overruled.

### IV.    Imposition of Prison Sentence

{¶ 17}  In her second assignment of error, Gaus argues that the trial court abused its discretion in sentencing her to prison, rather than to community control, based on her lack of prior convictions, "lack of violence," and the information contained in the presentence investigation.

{¶ 18}  In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard.   *See State v. Marcum*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-1002, ¶ 9; *State v. Rodeffer,* 2013-Ohio-5759, 5 N.E.3d 1069 (2d Dist.).   Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.   We do not review a trial court's sentence for an abuse of discretion.   *Marcum* at ¶ 10.

{¶ 19}  R.C. 2929.13(B)(1)(a) states that, except as provided in R.C. 2929.13(B)(1)(b), an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense *shall* be sentenced to a community control sanction of at least one year's duration, if certain criteria apply.   R.C. 2929.13(B)(1)(b) provides that a court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of eleven listed circumstances apply, including, for example, 1) the offense was committed while having a firearm on or about the offender's person or under the offender's control, 2) the offense is a sex offense under R.C. Chapter 2907, 3) the offense was

committed for hire or as part of an organized criminal activity, or 4) the offender was serving or previously had served a prison term at the time of the offense.

{¶ 20}  Courts use various language in describing the requirements and interplay of R.C. 2929.13(B)(1)(a) and (b).  Some courts have referred to R.C. 2929.13(B)(1)(a)'s requirement that community control be imposed if all of the qualifying conditions are met and none of the exceptions set forth in R.C. 2929.13(B)(1)(b) applies as a "presumption" of community control, whereas other courts refer to community control as "mandatory," subject to certain conditions and exceptions.  The bottom line is that the statutory requirement to impose community control for qualifying fourth and fifth degree non-violent offenses is subject to certain fact-finding by the trial court.

{¶ 21} For example, in *State v. Hamilton*, 1st Dist. Hamilton No. C-140290, 2015-Ohio-334, the defendant was convicted of 13 theft offenses, for which many of the victims were elderly, but the offenses were non-violent, non-qualifying felonies of the fourth degree.   In other words, under R.C. 2929.13(B)(1)(a), the theft offenses were ones for which community control was mandated unless the trial court found one or more of the factors set forth in R.C. 2929.13(B)(1)(b)(i-xi).   The court did not find any of these factors (although the State tried to present evidence in support of one of the factors on appeal), and thus the appellate court found that the prison sentences were contrary to law.   *See also State v. Myers*, 6th Dist. Ottawa No. OT-14-010, 2015-Ohio-916 (court found "presumption of community control" was overcome by defendant's conviction for a sex offense, which is an exception to the presumption); *State v. Lopez*, 2015-Ohio-5269, 43 N.E.3d 492, ¶ 57 (8th Dist.) (trial court's imposition of prison sentence without making any of the findings under R.C. 2929.13(B)(1)(b) was contrary to law);   *State v. Martin*, 2d Dist.

Clark No. 2014-CA-69, 2015-Ohio-697 (trial court was "not restricted" from imposing a prison sentence for a fourth-degree felony attempted robbery conviction because of its findings that it was an offense of violence and that the defendant was on probation at the time of the offense, each of which made "mandatory" community control inapplicable); *State v. Freeman*, 8th Dist. Cuyahoga No. 103677, 2016-Ohio-3178 (trial court improperly concluded that burglary was an "offense of violence" for purposes of imposing a prison sentence rather than community control).

{¶ 22} In imposing a prison sentence in Gaus's case, rather than community control, the trial court acknowledged that neither the State nor defense counsel had taken the position that any of the factors warranting a prison sentence under R.C. 2929.13(B) was present. In fact, despite the plea colloquy in which Gaus acknowledged that she could be sent to prison, the prosecutor, at sentencing, stated that "she sits here before you to be sentenced on a felony of the fifth degree, and * * * prison is not a possible penalty for her given Ohio law." Further, the investigator who prepared the PSI also did not recommend a prison sentence.

{¶ 23} Nonetheless, the court imposed a one-year prison sentence on Gaus. The court found "that the Defendant committed the offense as part of organized criminal activity" (R.C. 2929.13(B)(1)(b)(ix)), based on engaging her unknowing friends and family in the events at which money was raised, "presenting herself as a cancer victim, [and] doing so in front of 100 people," and benefitting from the proceeds of an online fundraising tool. The court also observed that there were at least 31 victims of her offense (and probably more who could not be documented). The court stated that its finding of organized criminal activity permitted its imposition of a prison term. The court further

stated that

> no reasonable alternatives to imprisonment are available when taking into account the totality of the circumstances surrounding the nature of the underlying criminal offense for which community control was being considered. In this Court's view, this is more than just a theft case. And in this Court's view, this is more than deceiving a community. This is psychologically impacting the growth of your children through their belief that you were to die over and over and over again.

Gaus does not specifically address this reasoning in her brief.

{¶ 24} The term "organized criminal activity" (R.C. 2929.13(B)(1)(b)(ix)) is not defined in R.C. Chapter 2929. Ohio courts have applied a case-by-case analysis to determine whether an offense is part of an organized criminal activity, keeping in mind that the absence of a definition of "organized criminal activity" is to be construed against the State, not the defendant. *State v. Lyles*, 8th Dist. Cuyahoga No. 97524, 2012-Ohio-3362, ¶ 13 and R.C. 2901.04(A). "There is not a bright line test for 'organized criminal activity,' nor does it have a singular application." *State v. Orms*, 10th Dist. Franklin No. 14AP-750, 2015-Ohio-2870, ¶ 24.

{¶ 25} Courts have generally considered the scope and length of the criminal activity, whether the offense was committed spontaneously/impulsively or with extensive planning, the number of people involved, and the nature of the charges in determining whether there was "an organized criminal activity." *See, e.g., Orms*; *State v. Coran*, 2d Dist. Clark No. 2003-CA-80, 2004-Ohio-6874; *State v. Miller*, 4th Dist. Washington No. 07CA1, 2008-Ohio-1059; *State v. Radcliff*, 10th Dist. Franklin No. 97APA08-1054, 1998

WL 120304 (Mar. 17, 1998). Several cases also reference the definition of organized criminal activity set forth in R.C. 177.01(E)(1), but this definition references the offense of "engaging in a pattern of corrupt activity" (which is not at issue in this case), and at least one court has noted that "there is no basis for the application of a definition found in the creation of a legislative commission to the criminal code." *Lyles* at ¶ 12, citing *State v. Young,* 62 Ohio St.2d 370, 406 N.E.2d 499 (1980). *See also State v. Cuble*, 4th Dist. Washington No. 07CA37, 2008-Ohio-4602, ¶ 14 ("[I]f the Ohio General Assembly intended for R.C. 177.01(E)(1) to be the definition of organized criminal activity, they could have written that preference into the statute.")

{¶ 26} The trial court made repeated references at the sentencing hearing and in its judgment to Gaus's disregard for her children and the adverse psychological effects that her actions had on her children. These were valid considerations in weighing the seriousness of Gaus's offense; however, these factors were not relevant to the determination that Gaus had engaged in "an organized criminal activity" for purposes of imposing a prison sentence where R.C. 2929.13(B)(1)(a) states that an offender shall be sentenced to community control, absent specifically listed circumstances.

{¶ 27} The central question is whether we clearly and convincingly find that the trial court's determination that Gaus committed the offense "as part of an organized criminal activity" is unsupported by the record. "Organized" means "arrange[d] or form[ed] into a * * * functioning whole," "arrange[d] by systematic planning and united effort," or "having a formal organization to coordinate and carry out activities." *Webster's Ninth New Collegiate Dictionary* 831 (1990). The trial court found that Gaus allowed and encouraged fundraisers to be "organized" on her behalf for several months, without the

other organizers having knowledge of her ruse. (It does not appear that others were knowingly involved in criminal activity with her while she allowed them to raise money on her behalf and perpetuated the illusion that she was sick. Gaus's then-boyfriend eventually surmised, or was told by Gaus, that she was not ill, but there is no indication that he was involved in the scheme, and he eventually reported it to the police.) Thus, while no one else was knowingly[1] involved in the deception of donors on Gaus's behalf, her ongoing, planned thefts were committed through her exploitation of the efforts of many other individuals. Under these very specific circumstances, even though other individuals were not culpable, we cannot clearly and convincingly conclude that the trial court's determination that Gaus engaged in an organized criminal activity was unsupported by the record.

{¶ 28} Once a court determines that it had discretion to impose a prison term under R.C. 2929.13(B)(1)(b), it is required to weigh the purposes and principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11. To this end, R.C. 2929.12(B) sets forth factors indicating that an offender's conduct is more serious than conduct normally constituting the offense, and R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists factors that trial courts are to consider regarding the offender's likelihood of committing future crimes, and R.C. 2929.12(F) requires the

---

[1] "Knowingly" is defined at R.C. 2901.22(B).

sentencing court to consider the offender's military service record.

{¶ 29} In exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard,* 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.).

{¶ 30} The trial court found that a term of imprisonment was consistent with the purposes and principles of sentencing in this case. In weighing the factors bearing on the seriousness of Gaus's offense, the trial court noted the large number of victims, that she took advantage of her relationships with family and friends in perpetuating the crime, that she purposely gave the false impression of having cancer over several months, and that her children were "incorporated" into her false claims. Additionally, among factors making the offense "more serious," the court noted that the age of the children "exacerbated" their "physical or mental injury," and that the children "suffered serious physical, psychological or economic harm" because of their belief that their mother would soon die. The court observed that Gaus's deception was likely to make members of the community less likely to help others who are in difficult circumstances in the future; several of the victim impact statements also referenced this likely effect. Among the "less serious" factors, the court observed that Gaus had not caused or expected to cause physical harm to any person or property.

{¶ 31} The trial court was technically incorrect in referring to the children as victims and in treating the psychological effect of Gaus's conduct as psychological harm to a "victim," with respect to the seriousness of the offense. However, as discussed above, the trial court was permitted to consider other relevant factors in assessing the seriousness of the offense, including the foreseeable collateral effect of Gaus's conduct on her children.

{¶ 32} With respect to recidivism, the court found that Gaus showed no remorse for the offense or for the deception and "emotional trauma" caused to her close friends and family. The court also observed that she had no history of criminal offenses. The court noted Gaus's former husband's allegations that she had previously claimed to have suffered from thyroid cancer and multiple sclerosis (MS) (claims which he doubted). In fact, at the sentencing hearing, Gaus reaffirmed her claims that she had "thyroid problems" and MS, but stated that she did not "have doctor papers" to substantiate these diagnoses. However, the PSI stated that Gaus was in good physical health, "with no chronic or acute conditions, problems, symptoms, or diagnoses."

{¶ 33} We cannot clearly and convincingly find that the trial court's determination of "organized criminal activity" on Gaus's part, its weighing of the seriousness and recidivism factors, and its decision to impose a one-year prison sentence were unsupported by the record.

{¶ 34} The second assignment of error is overruled.

### V. Conclusion

{¶ 35} The judgment of the trial court will be affirmed as modified.

. . . . . . . . . . . . .

FAIN, J. and WELBAUM, J., concur.

Copies mailed to:

Jane A. Napier
Marcy Vonderwell
Hon. Nick A. Selvaggio