**[Cite as *State v. Moore*, 2022-Ohio-409.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-26 |
| | : | |
| v. | : | Trial Court Case Nos. 2020-CR-710B |
| | : | & |
| LESLEY M. MOORE | : | 2021-CR-85A |
| | : | |
| Defendant-Appellant | : | (Criminal Appeal from |
| | : | Common Pleas Court) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of February, 2022.

. . . . . . . . . . .

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

BRIANA C. BREAULT, Atty. Reg. No. 0099773, 130 West Second Street, Suite 2150, P.O. Box 10126, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Lesley M. Moore appeals from her conviction, following pleas of guilty, to three counts of theft. We will affirm the judgments of the trial court.

{¶ 2} On December 21, 2020, Moore was indicted in Clark C.P. No. 2020-CR-710B, on one count of theft, in violation of R.C. 2913.02(A)(3), a felony of the fifth degree. Her co-defendant in that case was Cameron Moore ("Cameron"). Moore pled not guilty. The bill of particulars stated that Moore had made a deposit into Cameron's bank account at a Springfield bank; in doing so, she represented that the amount of the deposit was $3000, but only one dollar was in the deposit envelope. The bill of particulars further stated that the "fraudulent money was spent via the co-defendant's debit card before the fraud was detected by the bank."

{¶ 3} On February 9, 2021, Moore was also indicted in Clark C.P. No. 2021-CR-85A on two counts of theft in violation of R.C. 2913.02(A)(1), felonies of the fifth degree, and two counts of identity fraud in violation of R.C. 2913.49(E), felonies of the fourth degree. Her co-defendant in that case was Ayona Lane. Moore pled not guilty.

{¶ 4} On March 10, 2021, Moore withdrew her guilty pleas in both cases. Pursuant to a plea agreement, she pled guilty to the one count of theft in Case No. 2020-CR-710B and to the two counts of theft in Case No. 2021-CR-85A. The remaining counts were dismissed.

{¶ 5} At sentencing on April 8, 2021, Moore requested community control. Her attorney asserted the following bases for a community control sentence:

> We believe it may even fall under mandatory community control
> specifically and that these are the first felonies that Miss Moore has in her

history.   She does have some misdemeanor theft charges and identity fraud.   However, she's never had any issues completing any sanctions by the Court.   She's never had any community control violations.   There's nothing to indicate from [her prior] cases that she would be a - - not amen[ ]able to community control in this situation.

Again, she's had no prior felonies or no acts of violence.   There was an assault on her record, but that was approximately ten years ago, so I don't believe that would pull her out at this time, Your Honor.

Also, there is quite a bit of restitution here and at the time Miss Moore was not employed.   She is employed now and that would give her the ability to, as part of her community control, pay back that restitution to the victims in this case.

Defense counsel also noted that Moore had been assessed at McKinley Hall "for substance abuse addiction," that she had been placed into an intensive outpatient program three times a week, and that recovery from her addiction "would also greatly prevent reoccurrences of incidents in the future."

{¶ 6} With respect to the circumstances surrounding the offenses, the court noted that, in each instance, Moore and a codefendant were "actually at the bank," one of them made a "false deposit" and then "proceeded to use a debit card at a variety of places over the weekend before employees of a bank return on Monday."   The court stated:

* * * So it always appears it's you and a codefendant, and then you're using an account of a third person, which appears to be involved in this fraud as well by letting you use their account.   And then if they get

questioned, they just deny any knowledge of the activities, but all three of you recover a portion of the money or the items that you purchase.

That's how all the police reports read and that's confirmed by your statement to the probation office that you heard on the street you could put an ATM deposit ticket into the bank without actually putting any money in it; at least on the books then that would make it appear that the account had money in it, the amount that was written out, but there really was no money in it.

And then you indicated that the person whose account is used is also in on it and they just deny any knowledge of the activities, that you were all supposed to get a portion of the money. And this happened repeatedly, it appears * * *.

{¶ 7} The court inquired as to how Moore intended to repay $18,000. She responded that she would "[w]ork and pay the restitution. I have no choice. That's a lot to pay back." The court stated that it was "not overly optimistic" about Moore's ability to pay the money back.

{¶ 8} The trial court found that Moore had committed the offenses as part of an organized criminal activity under R.C. 2929.13(B)(1). The court agreed with defense counsel that Moore did not have an extensive prior record but noted that she did have two prior misdemeanor theft convictions. The charged offenses were felonies, which the court characterized as "basically stealing money from a bank." The court then found that consecutive sentences were necessary to protect the public from future crime and to punish the defendant, that such sentences were not disproportionate to the seriousness

of her conduct and to the danger she posed to the public, and that these multiple offenses were committed as a part of a course of conduct. Finally, the court found that the harm caused (theft of $18,000) was so great that no single prison term for any of the offenses committed would adequately reflect the seriousness of Moore's conduct.

{¶ 9} The court imposed a prison term of ten months in Case No. 2020-CR-710B, and prison terms of 10 months each for the offenses in Case No. 2021-CR-85A, to be served consecutively, for an aggregate term of 30 months. The court ordered Moore to pay restitution in Case No. 2020-CR-710B in the amount of $5,927.59, and in Case No. 2021-CR-85A in the amount of $12,925. The court's judgment entries also included its finding that it had discretion to impose prison terms because Moore had committed the offenses in the two cases as part of an organized criminal activity, citing R.C. 2929.113(B)(1)(b)(viii) and the actions committed in these two cases.

{¶ 10} Moore asserts two assignments of error on appeal. Her first assignment of error states:

> THE JUDGMENT OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE RECORD DOES NOT SUPPORT THE APPELLANT'S SENTENCE AND THE APPELLANT'S SENTENCE IS CONTRARY TO LAW.

{¶ 11} Moore asserts that, based upon R.C. 2929.13(B)(1)(a), the trial court was required by statute to impose a sentence of community control sanctions. She asserts that the trial court attempted to use "facts that must be submitted to a jury" to increase the penalty beyond the prescribed statutory minimum, citing *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Moore asserts that the fact that

the legislature gives the trial court discretion in imposing a prison sentence to an otherwise qualified individual does not eliminate the constitutional requirement that facts upon which increased penalties are imposed must be "submitted to a jury or at least put on record by the State."

{¶ 12} Moore also asserts that the trial court erred in concluding that she had committed the offense as part of an organized criminal activity, because this finding was not supported by the record. She argues that she was entitled to the presumption of community control under R.C. 2929.13(B)(1)(a) for the following reasons: she had no felony record; the most serious charge against her at the time of sentencing was a felony of the fifth degree; there was no indication in the record of a lack of community control available; and she had not previously been convicted of or pleaded guilty to a misdemeanor or felony of violence in over ten years. She also asserts that her "substance abuse disorder," for which she had begun receiving treatment through an intensive outpatient program, weighed against a prison sentence. She points out that the State did not oppose her request for community control sanctions or "put on any evidence in aggravation that would lead the trial court to its conclusion that [she] engaged in organized criminal activity." Moore contends that the facts to which she pled guilty, as stated in the indictment and bill of particulars, satisfied the elements of theft, but did not establish that she engaged in organized criminal activity. Finally, she contends that a lesser term of incarceration or community control sanctions would have adequately met the overriding purposes of felony sentencing, i.e., punishment and rehabilitation.

{¶ 13} In response, the State argues that the trial court had discretion to impose a prison sentence because it found that Moore's "multiple theft offenses were committed as

part of an organized criminal activity" pursuant to R.C. 2929.13(B)(1)(b)(viii). Moreover, the State asserts both that the record supports the trial court's finding of organized criminal activity and that R.C. 2953.08(A)(2) bars appellate review.

{¶ 14} The State further contends that *Apprendi* does not bar the trial court from determining whether there was organized criminal activity, citing *State v. Castle*, 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974. The State asserts that the trial court reasonably relied on information in the presentence investigation report (PSI) in making its finding of organized criminal activity.

{¶ 15} Finally, the State asserts that, even if the trial court's finding of organized criminal activity was improper, community control was not mandated by R.C. 2929.13 in this case, because the presumption of community control in R.C. 2929.13 only applies when a defendant pleads guilty to only one nonviolent felony of the fourth or fifth degree. Because Moore pleaded guilty to three felonies of the fifth degree in this case, the State contends that she was not entitled to the presumption of community control.

{¶ 16} In reply, Moore asserts that the State "misstates the law under R.C. 2929.13(B)(1)(a) and R.C. 2929.13(B)(1)(b)" and that "leave [of court] is not required to appeal a sentence that is contrary to law under R.C. 2953.08(A)(4)." Moore cites *State v. Taylor*, 2d Dist. Clark No. 2013-CA-59, 2014-Ohio-2821, and she asserts that based on this Court's interpretation of R.C. 2929.13(B)(1)(a), the trial court was required to sentence Moore to community control under R.C. 2929.13(B)(1)(a). Moore asserts that she met each condition listed in R.C. 2929.13(B)(1)(a). Finally, Moore reiterates her argument that a jury must make findings that effectively increase the statutory maximum sentence for a defendant, and thus a jury was required to determine whether she had

engaged in organized criminal activity.

{¶ 17} R.C. 2953.08 provides:

(A) In addition to any other right to appeal and except as provided in division (D) of this section, a defendant who is convicted of or pleads guilty to a felony may appeal as a matter of right the sentence imposed upon the defendant on one of the following grounds:

* * *

(2) The sentence consisted of or included a prison term and the offense for which it was imposed is a felony of the fourth or fifth degree * * *. If the court specifies that it found one or more of the factors in division (B)(1)(b) of section 2929.13 of the Revised Code to apply relative to the defendant, the defendant is not entitled under this division to appeal as a matter of right the sentence imposed upon the offender.

* * *

(4) The sentence is contrary to law.

{¶ 18} This Court has held:

When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes, including R.C.

2929.13(B); or (2) the sentence is otherwise contrary to law. *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

*State v. Trent*, 2d Dist. Clark No. 2020-CA-61, 2021-Ohio-3698, ¶ 8.

{¶ 19} R.C. 2929.13 provides:

(B)(1)(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction or combination of community control sanctions if all of the following apply:

(i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.

{¶ 20} We agree with the 6th District that "the community control presumption contained in [R.C. 2929.13(B)(1)(a)] applies only where the defendant pleads guilty to a singular nonviolent felony of the fourth of fifth degree." *See State v. Boswell,* 6th Dist. Erie E-18-053, 2019-Ohio-2949, ¶ 20, 22, quoting *State v. Bentley,* 11th Dist. Ashtabula No. 2017-A-0017, 2017-Ohio-8943, ¶ 19. However, as our analysis demonstrates, Moore's assertion that her sentence was contrary to law also fails on the merits.

{¶ 21} R.C. 2929.13(B)(1)(b) provides: "The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply: * * * (viii) The offender committed the offense for hire or as part of an organized criminal activity."

{¶ 22} In *Castle,* 2d Dist. Clark No. 2016-CA-16, 2016-Ohio-4974, we observed:

Courts use various language in describing the requirements and interplay of R.C. 2929.13(B)(1)(a) and (b). Some courts have referred to R.C. 2929.13(B)(1)(a)'s requirement that community control be imposed if all of the qualifying conditions are met and none of the exceptions set forth in R.C. 2929.13(B)(1)(b) applies as a "presumption" of community control, whereas others refer to community control as "mandatory," subject to certain conditions and exceptions. The bottom line is that the statutory requirement to impose community control for qualifying fourth and fifth degree non-violent offenses is subject to certain fact-finding by the trial court.

*Id.* at ¶ 12.

{¶ 23} We have also stated:

In essence, R.C. 2929.13(B)(1)(a) mandates community control for fourth and fifth-degree felony offenses when certain requirements are met. A sentencing court has no discretion to impose a prison term when a defendant is sentenced under division (B)(1)(a). Under division (B)(1)(b), however, a trial court regains discretion to impose a prison term on a

defendant who otherwise would fit within the scope of division (B)(1)(a) but for the presence of one or more additional facts. * * *

(Footnote omitted.) *State v. Taylor*, 2014-Ohio-2821, 15 N.E.3d 900, ¶ 7 (2d Dist.).

{¶ 24} We have further noted:

> The term "organized criminal activity" (R.C. 2929.13(B)(1)(b)(ix)) is not defined in R.C. Chapter 2929. Ohio courts have applied a case-by-case analysis to determine whether an offense is part of an organized criminal activity, keeping in mind that the absence of a definition of "organized criminal activity" is to be construed against the State, not the defendant. *State v. Lyles,* 8th Dist. Cuyahoga No. 97524, 2012-Ohio-3362, ¶ 13 and R.C. 2901.04(A). "There is not a bright line test for 'organized criminal activity,' nor does it have a singular application." *State v. Orms,* 10th Dist. Franklin No. 14AP-750, 2015-Ohio-2870, ¶ 24.

*State v. Gaus*, 2d Dist. Champaign No. 2015-CA-28., 2016-Ohio-4886, ¶ 24.

{¶ 25} As noted by the Fourth District:

> In determining whether there was "an organized criminal activity," courts have generally considered the scope and length of the criminal activity, whether the offense was committed spontaneously/impulsively or with extensive planning, the number of people involved, and the nature of the charges. *See, e.g.*, *State v. Orms*, 10th Dist. Franklin No. 14-AP-750, 2015-Ohio-2870; *State v. Coran*, 2d Dist. Clark No. 2003-CA-80, 2004-Ohio-6874; *State v. Miller*, 4th Dist. Washington No. 07CA1, 2008-Ohio-1059; *State v. Radcliff*, 10th Dist. Franklin Nos. 97APA08-1054 and

97APA08-1056 (Mar. 17, 1998). *See also*, *State v. Washington*, 4th Gallia No. 17CA8, 2018-Ohio-3545, ¶ 14, citing Griffin and Katz, OHIO FELONY SENTENCING LAW (1999), 368-369, Section T. 4.14.3 ("Commentators have defined an 'organized criminal activity' as 'criminal activity which because of the number of participants and planned utilization of those participants poses more of a risk to the public order than an activity carried out by a single individual acting in isolation from other offenders or than multiple individuals acting together spontaneously or impulsively.'"); *State v. Morgan*, 10th Dist. Franklin No. 13-AP-620, 2014-Ohio-5661, ¶ 38, (stating that "[a] defendant's participation in an aggravated robbery along with one or more co-defendants is sufficient to find the incident occurred as part of organized criminal activity").

*State v. Lewis*, 4th Dist. Marion No. 9-20-49, 2021-Ohio-1692, ¶ 27.

{¶ 26} We now must decide if the record supports the court's determination that R.C. 2929.13(B)(1)(b) gave it the discretion to impose a prison term. Since the case was resolved by a plea, the PSI provides the most detail in the record, and we have reviewed it. As noted by the trial court, the scope and length of Moore's engagement in theft with her co-defendants was significant; they committed the offenses over several months, and they acted with some planning rather than impulsively or spontaneously. Three people were involved in the scheme that involved both theft and deceit. Moore and her co-defendants planned the timing of their fake deposits so that they could withdraw cash before the bank became aware of the fraud. They were able to steal over $18,000. The trial court reasonably concluded that Moore and her co-defendants' actions posed more

of a risk to public order than an individual acting in isolation or multiple people acting impulsively, since the scheme required more than one person to accomplish it, and it could not be accomplished impulsively or spontaneously. In other words, the trial court reasonably concluded that it could sentence Moore to prison because she had engaged in organized criminal activity pursuant to R.C. 2929.13(B)(1)(b)(viii). Thus, Moore's sentence was not contrary to law. For the foregoing reasons, Moore's first assignment of error is overruled.

{¶ 27} Moore's second assignment of error is as follows:

THE JUDGMENT OF THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE RECORD DOES NOT SUPPORT THE ORDER OF RESTITUTION AND THE ORDER OF RESTITUTION IS CONTRARY TO LAW.

{¶ 28} Moore asserts that the trial court "failed to order joint and several restitution," despite repeatedly referencing her co-defendants during the sentencing hearing. She asserts that, although R.C. 2929.18 does not require apportionment of restitution among co-defendants, it also does not prohibit apportionment. She also argues that R.C. 2929.18 specifically limits an order of restitution to the victim's economic loss suffered as a result of the offense, and the amount of restitution ordered by the trial court between Moore and Cameron in Case No. 2020-CR-710B exceeded the economic loss suffered.

{¶ 29} The State contends that, although "a victim is not permitted to receive a windfall in excess of his loss, an order for joint- and several liability is perhaps sound practice, but not absolutely necessary." The State cites *State v. Becraft*, 2d Dist. Clark

No. 2013-CA-54, 2015-Ohio-3911. According to the State, restitution for the full amount of loss may be demanded from each co-defendant, although the victim may only recover up to the actual amount of loss. Thus, Moore would need to establish that the victim had been compensated by another source in order to have her restitution order reduced, and she has not done so.

{¶ 30} As this Court has noted:

R.C. 2929.18(A)(1) gives a sentencing court discretion to order restitution to compensate the victim for economic loss. *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, ¶ 3, ¶ 20. The amount of restitution may be based on "an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." R.C. 2929.18(A)(1); *Lalain* at ¶ 3, ¶ 20.

However, the amount of restitution cannot be greater than the amount of economic loss suffered by the victim as a direct and proximate result of the commission of the offense. *Lalain* at ¶ 22 citing R.C. 2929.18(A)(1); *State v. Banks*, 2d Dist. Montgomery No. 20711, 2005-Ohio-4488, ¶ 5 ("A sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted."). Because double recovery would amount to an impermissible economic windfall for the victim, the order of restitution must take account of any offsets to the victim's economic loss and any mitigation of damages in the form of compensation received for the loss. *See State v. Clayton*, 2d Dist.

Montgomery No. 22937, 2009-Ohio-7040, ¶ 56.

A trial court abuses its discretion when it orders restitution that does not bear a reasonable relationship to the actual financial loss suffered. *State v. Woods*, 2d Dist. Clark No. 2015-CA-75, 2016-Ohio-1103, ¶ 10, citing *State v. Williams*, 34 Ohio App.3d 33, 34, 516 N.E.2d 1270 (2d Dist.1986).

* * *

In general, a trial court's order of restitution must indicate the amount of restitution and the individual to whom it is to be paid. *State v. Murillo*, 2d Dist. Montgomery No. 21919, 2008-Ohio-201, ¶ 17 ("In the absence of a judgment indicating the amount of restitution and the individual to whom it was to be paid, the court has not properly ordered [the defendant] to pay restitution."). We have recognized that it may not be necessary to identify each victim by name. [*State v.*] *DeLong,* [2d Dist. Montgomery No. 20656, 2005-Ohio-1905,] at ¶ 19. However, particularly when there are multiple victims, the trial court's order should, at a minimum, include the total amount of restitution and "a cogent record must exist as to whom said amount shall be distributed." *Id.* We emphasize that it is the role of the trial court to determine the appropriate amount of restitution for each victim, and when the amount of restitution is in dispute, the trial court's determination of restitution may differ from that proposed by the defendant or the State.

*State v. Shaw*, 2d Dist. Greene Nos. 2017-CA-35, 2017-CA-36, 2017-CA-37, 2018-Ohio-3816, ¶ 17-19, 30.

**{¶ 31}** This Court has also stated:

> The Third District Court of Appeals has held that the statute, R.C. 2929.18, allowing the imposition of restitution does not require apportionment. *State v. Kline,* 3d Dist. Henry No. 7-12-03, 2012-Ohio-4345, ¶ 12. However, the statute also does not prohibit apportionment. Since the statute specifically limits an order of restitution to the victim's actual economic losses, suffered as a direct and proximate result of the offense, it can be concluded that the victim is not entitled to double recovery from multiple offenders. Therefore, it would be a sound and reasonable practice for a trial court to designate the liability for restitution among co-defendants as joint and several. If an order of restitution is not designated as imposing joint and several liability among codefendants, the statute, R.C. 2929.18(A)(1), allows the offender to file a motion for modification of the payment terms of any restitution ordered. If the movant establishes that the victim was compensated by any other source, the amount of the restitution should be reduced.

*State v. Becraft,* 2d Dist. Clark No. 2013-CA-54, 2015-Ohio-3911, ¶ 30.

**{¶ 32}** The PSI stated that the total amount of restitution was $18,852.59. There was no evidence that the bank had received any restitution from any other source. Hence, the trial court could impose the full $18,852.59 against Moore; in the event a co-defendant pays a portion, a motion in the trial court to modify the amount of restitution would be in order.

**{¶ 33}** The second assignment of error is overruled.

{¶ 34} The judgments of the trial court are affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Ian A. Richardson
Briana C. Breault
Hon. Douglas M. Rastatter