[Cite as *State v. Lewis*, 2021-Ohio-1692.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
MARION COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO.  9-20-49

    v.

JENSEN LEWIS,                         O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Marion County Common Pleas Court
Trial Court No. 20-CR-185

Judgment Affirmed

Date of Decision:   May 17, 2021


APPEARANCES:

    *Todd A. Anderson* for Appellant

    *Nathan R. Heiser* for Appellee

Case No. 9-20-49

**SHAW, J.**

{¶1} Defendant-appellant, Jensen Lewis ("Lewis"), appeals the November 6, 2020 judgment of the Marion County Court of Common Pleas journalizing her conviction after pleading guilty to one count of fifth-degree felony possession of criminal tools and sentencing her to a twelve-month prison term. On appeal, Lewis assigns error to the trial court's decision to impose a prison term under R.C. 2929.13(B)(1)(b).

*Relevant Facts and Procedural History*

{¶2} On June 3, 2020, the Marion County Grand Jury returned a one-count indictment against Lewis alleging that she committed the offense of Count One, pandering sexually oriented matter involving a minor, a felony of the second degree, in violation of R.C. 2907.322(A)(1). Lewis entered a plea of not guilty upon arraignment.

{¶3} The charge arose from allegations that Lewis created and published a video of herself and B.L., a 15-year-old female, engaging in sexual conduct on a website application ("app") called "Periscope."[1] Lewis was alleged to have known that B.L. was a minor at the time she created and published the video. Investigation by law enforcement revealed that Lewis, B.L., and other females, some of whom were minors, had made acquaintances with a man called "Junior" who sent them

---

[1] Periscope is an app that permits the user to share and broadcast live video streams direct from a smartphone or tablet.

money through the apps of "Venmo" and "Cashapp"[2] in exchange for semi-nude, nude, and sexually explicit photographs and videos.

{¶4} On October 29, 2020, the State filed a bill of information alleging that Lewis committed the offense of Count Two, possession of criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A), by using a cell phone to record and live stream the sex act with B.L.

{¶5} On November 6, 2020, Lewis appeared before the trial court, waived prosecution by indictment, and consented to prosecution by bill of information. The State moved to *nolle prosequi* Count One, second-degree felony pandering sexually oriented material involving a minor. The trial court advised Lewis that the maximum prison term for the offense was twelve months, and that it was not bound by the parties' joint sentencing recommendation of community control sanctions. Lewis subsequently acknowledged her understanding of this on the record. Lewis then entered her plea of guilty to Count Two, fifth-degree felony possession of criminal tools. The trial court accepted Lewis's guilty plea, set the matter for sentencing, and ordered a presentence investigation and a community based correctional facility referral.

{¶6} On November 30, 2020, Lewis appeared for sentencing. The trial court found that Lewis had committed the offense "for hire or as part of an organized

---

[2] These apps allow the user to send money to anyone with an account. The funds are usually drawn from and/or deposited into a linked bank account.

criminal activity." (Nov. 30, 2020 Sent. Hrg. at 18). The trial court then imposed the maximum sentence of a twelve-month prison term and a $2,500 fine upon Lewis. Lewis's sentence was journalized in the trial court's November 30, 2020 Judgment Entry of Sentencing.

{¶7} It is from this judgment that Lewis now appeals, asserting the following assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN ORDERING DEFENDANT-APPELLANT TO SERVE TWELVE (12) MONTHS IN PRISON.**

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING DEFENDANT-APPELLANT TO SERVE TWELVE (12) MONTHS IN PRISON.**

*First Assignment of Error*

{¶8} In her first assignment of error, Lewis argues that the trial court was required to impose community control sanctions for her fifth-degree felony conviction under R.C. 2929.13(B)(1)(a). Specifically, Lewis maintains that the trial court erred in finding that an exception to the community control presumption applied to authorize the imposition of a prison term. Lewis contends the trial court's finding that she committed the offense for hire or as part of an organized criminal activity under R.C. 2929.13(B)(1)(b)(viii) is not supported by the record.

*Standard of Review*

{¶9} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 22. Specifically, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate a sentence and remand for resentencing if it clearly and convincingly finds that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 28.

{¶10} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See also, In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross*, 161 Ohio St. at 477.

*Legal Authority*

{¶11} The trial court sentenced Lewis pursuant to R.C. 2929.13(B)(1)(b). Revised Code section 2929.13 governs sentencing guidelines for various specific

offenses and degrees of offenses. Of important note to the instant case, "[o]n September 30, 2011, H.B. 86 went into effect and amended R.C. 2929.13(B)(1) to prohibit prison sentences for certain fourth and fifth-degree felonies." *State v. Grimmette*, 4th Dist. Scioto No. 18CA3830, 2019-Ohio-3576, ¶ 10. Thus, R.C. 2929.13(B)(1)(a) sets forth a presumption that community sanctions are to be imposed for certain fifth-degree felony offenses, if the offender meets the statutory criteria.

**{¶12}** Specifically, R.C. 2929.13(B)(1)(a) reads as follows:

**(B)(1)(a) *Except as provided in division (B)(1)(b) of this section*, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction or combination of community control sanctions if all of the following apply:**

> **(i) The offender previously has not been convicted of or pleaded guilty to a felony offense.**
>
> **(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.**
>
> **(iii) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.**

(Emphasis added).

**{¶13}** Even though R.C. 2929.13(B)(1)(a) includes a presumption for community control if an offender is convicted of, or pleads guilty to, a felony of the

fourth or fifth degree that is not an offense of violence (or a qualifying assault offense), the presumption of a community control sanction is subject to the exceptions listed in R.C. 2929.13(B)(1)(b). *See State v. Bartholomew*, 4th Dist. Pickaway No. 19CA29, 2020-Ohio-4611, ¶ 25; *State v. Napier*, 12th Dist. Clermont No. CA2016-04-022, ¶ 44; *see also State v. Parker*, 8th Dist. Cuyahoga No. 104610, 2017-Ohio-4294, ¶ 7 ("Application of R.C. 2929.13(B)(1)(a), however, is subject to R.C. 2929.13(B)(1)(b)."); *State v. Reed*, 5th Dist. Richland No. 17CA20, 2017-Ohio-8237, ¶ 9 ("R.C. 2929.13(B)(1)(b) sets forth exceptions to the requirement an offender for a fifth degree felony, who meets the criteria set forth in subsection (a), be sentenced to community control.").

**{¶14}** Revised Code section 2929.13(B)(1)(b) provides as follows:

**(b)** ***The court has discretion to impose a prison term upon*** **an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply:**

> **(i)   The offender committed the offense while having a firearm on or about the offender's person or under the offender's control.**
>
> **(ii)   If the offense is a qualifying assault offense, the offender caused serious physical harm to another person while committing the offense, and, if the offense is not a qualifying assault offense, the offender caused physical harm to another person while committing the offense.**
>
> **(iii)  The offender violated a term of the conditions of bond as set by the court.**

> **(iv) The offense is a sex offense that is a fourth or fifth degree felony violation of any provision of Chapter 2907. of the Revised Code.**
>
> **(v) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.**
>
> **(vi) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.**
>
> **(vii) The offender held a public office or position of trust, and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.**
>
> **(viii)*The offender committed the offense for hire or as part of an organized criminal activity.***
>
> **(ix) The offender at the time of the offense was serving, or the offender previously had served, a prison term.**
>
> **(x) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.**

(Emphasis added).  Thus, R.C. 2929.13(B)(1)(b) permits a trial court to impose a prison sentence for certain fifth-degree felony offenses if the trial court finds a statutory exception applies.  Here, the trial court found that it had the discretion to impose a prison term because Lewis committed the offense for hire or as part of an organized criminal activity under R.C. 2929.13(B)(1)(b)(viii).

-8-

*Trial Court's Application of R.C. 2929.13(B)(1)(b)*

**{¶15}** On appeal, Lewis maintains that the trial court was not authorized to impose a prison term for her fifth-degree felony possession of criminal tools conviction because she met the requirements of R.C. 2929.13(B)(1)(a). Therefore, Lewis argues that she was entitled to be sentenced to community control sanctions. Lewis further argues that the trial court's sentence is contrary to law because the trial court failed to make specific factual findings that an exception to the community control presumption under R.C. 2929.13(B)(1)(b)(viii) applied.

**{¶16}** Contrary to Lewis's contention on appeal, a trial court is not required to make specific factual findings when imposing a prison sentence pursuant to R.C. 2929.13(B)(1)(b). *See State v. Paxon*, 11th Dist. Trumbull No. 2019-T-0011, 2019-Ohio-3551, ¶ 18 ("the statute does not require a court to explicitly make a finding before it has discretion to impose prison. Instead, a plain reading of the applicable version of R.C. 2929.13(B)(1)(b) confirms that if any of the factors apply, the court has discretion to impose a prison term. No explicit findings are required."); *State v. Benson*, 7th Dist. Mahoning No. 18 MA 0042, 2019-Ohio-4635, ¶ 13 (stating that "a trial court is not required to make specific findings when imposing a prison sentence pursuant to R.C. 2929.13(B)(1)(b)"). [3]

---

[3] In her reply brief Lewis also argues that the trial court was required to make its R.C. 2929.13(B)(1)(b) finding in its judgment entry of sentencing. However, Lewis fails to cite any authority to support her contention that this is a required part of the entry or that the lack of such a finding constitutes reversible error.

{¶17} Nevertheless, in this case, the record establishes the trial court specifically found that Lewis had committed the offense "for hire or as part of an organized criminal activity." *See* R.C. 2929.13(B)(1)(b)(viii). Specifically, the trial court found at sentencing that:

> **This is the Defendant's first felony conviction. However, amongst the seriousness factors, the Court must find that the injury to the victim was worsened by her age, the victim suffered serious psychological harm as a result of the offense, the relationship with the victim facilitated the offense, *the offense was committed for hire or as part of an organized criminal activity*. And that's what this was. This was—this was done for profit. It was much in the way drug dealers expand the number of people that they have selling the drugs for them. They see the money, and they take advantage of others to do that.**
>
> **You know, as [Defense Counsel] points out, many of the images on the phones here are not illegal. Miss Lewis was an adult. She was free to take pictures of herself and sell them, and videos of herself and sell them, including videos or live broadcasts of herself and other adults. But she chose to involve a child under the age of consent in our state in her videos, or in her live broadcasts. She confesses to this. It's on tape.**
>
> **\* \* \***
>
> **At any rate, she (Lewis) chose to involve a minor in her broadcast. She chose to engage in sexual conduct—not once, by performing sex on her—not twice, by having the child perform sex on her— but at least three times by also engaging in what the PSI refers to at the request of this Junior character who was uncharged in our jurisdiction—what is described as a 69 position, a third act. All of these acts are uncharged. But the Court can find that they— the fact that this is what the criminal tool was used for here makes it the worst form of the offense.**

> **It was done for profit. PSI reveals $4,200 to Miss Lewis for this. And that's an aggravating factor for this Court as well. This is an F5. This Court is bound by TCAP. But this was also done as part of a plea agreement.**
>
> **In reviewing the plea form, the last line of the plea form reads that in consideration of said pleas of guilty, the Court hereby enters a nolle as to Count 1, the felony 2 in this case. As such, the Court is guided by [*State v. Lucius*, 3d Dist. Logan No. 8-18-31, 2019-Ohio-Ohio-741], in which my appellate Court finds that a sentencing Court may consider charges that have been dismissed or reduced pursuant to a plea agreement citing [*State v. Parsons*, 7th Dist. Belmont No. 12 BE 11, 2013-Ohio-1281, ¶ 18, citing *State v. Starkey*, 7th Dist. No. 06MA110, 2007-Ohio-6702, ¶ 2; *State v. Cooey*, 46 Ohio St.3d 20, 35 (1989)].**
>
> **In doing so, this Court does find that a period of incarceration is appropriate in this case. And is going to impose a period of incarceration. I don't believe that this will silence child victims. I believe it will send a message to adult females not to engage in sexual conduct with children, and to use them for profit, and broadcast those acts.**
>
> **And therefore I am going to impose the maximum 12 month sentence, as well as the maximum $2500 fine, because this was done for profit.**

(Nov. 30, 2020 Sent. Hrg. at 18-20) (emphasis added).

**{¶18}** As provided above, the record clearly demonstrates the trial court specifically found that one of the statutory exceptions applied to this case, thereby invoking its discretionary authority to impose a prison term under R.C. 2929.13(B)(1)(b). At issue here then is whether the record supports the trial court's determination that R.C. 2929.13(B)(1)(b)(viii) provided it with the discretion to

impose a prison term, and whether the decision to impose a prison term was an abuse of its discretion.

{¶19} In the instant case, with the case being resolved by guilty plea, the presentence investigation report ("PSI") provides the most detail in the record regarding the nature and circumstances of Lewis's possession of criminal tools conviction. The PSI revealed that in the spring of 2019, local law enforcement was contacted by the mother of the victim, who discovered that her 15-year-old daughter, B.L., had made the acquaintance of an older adult male by the name of Junior. Junior had solicited nude pictures and other inappropriate sexual content from B.L. in exchange for money. B.L.'s mother became suspicious of nefarious activity upon noticing her daughter spending large sums of money. She later learned that B.L. had received payments from Junior totaling nearly $7,000. B.L.'s mother contacted law enforcement when she learned that Junior wanted to meet B.L. in person.

{¶20} Further investigation by law enforcement revealed that Lewis was also involved with Junior. B.L. disclosed to law enforcement that she created "sex shows" for Junior in exchange for payment with two other women, both of whom were over the age of 18. One of these women was her cousin and the other was Lewis, a friend of B.L.'s cousin. These videos were live streamed on both B.L.'s and Lewis's Periscope accounts.

{¶21} Detective Jagger with the Marion Police Department subsequently interviewed Lewis at the police station. Lewis recalled that B.L. was the first to be involved with Junior. Lewis became interested in making contact with Junior once she learned of the large amounts of money he had paid B.L. and B.L.'s cousin. Lewis told Detective Jagger that she was aware that B.L. was only 15 years old. Nevertheless, she admitted to broadcasting herself and B.L. engaging in sexual conduct over Periscope in exchange for receiving money from Junior via Cashapp. Specifically, Lewis admitted to live streaming one video, at Junior's request, during which she performed oral sex on B.L. and then B.L. performed oral sex on her. B.L. and Lewis live streamed a second video, again at Junior's request, with the two engaging in oral sex simultaneously in the "69" position. Lewis told Detective Jagger that she recalled being paid $1,500 from Junior for the month of November 2018. Lewis then showed Detective Jagger her account transactions which indicated that she received payments totaling $1,700 from February 20 to April 1, 2019, and $1,000 from April 12, 2019 to May 12, 2019. It was later determined that these videos were published on a pornography website.

{¶22} In addition to the narrative of Detective Jagger, the PSI also included a narrative of the PSI writer's interview with Lewis. In this interview, Lewis stated that she had met B.L. through B.L.'s cousin, with whom Lewis was "best friends." Lewis admitted to making videos and selling nude photos to Junior for money. She

also admitted to performing sexual acts with B.L. in a video, using her own Periscope account or B.L.'s account, that was eventually published on a pornography website. Lewis stated that she sold photos and videos to Junior from October 2018 to March or April 2019. She explained that she did so because she was unemployed and needed the money. At the time of sentencing Lewis was 22 years old.

{¶23} Lewis was initially charged with pandering sexually oriented matter involving a minor, a felony of the second degree. However, she later pled guilty to possessing criminal tools, in violation of R.C. 2923.24, a felony of the fifth degree. Revised Code section 2923.24 states:

> **(A)  No person shall possess or have under the person's control any substance, device, instrument, or article, _with purpose to use it criminally_.**
>
> **(B)  Each of the following constitutes prima-facie evidence of criminal purpose:**
>
> > **(1)   Possession or control of any dangerous ordnance, or the materials or parts for making dangerous ordnance, in the absence of circumstances indicating the dangerous ordnance, materials, or parts are intended for legitimate use;**
> >
> > **(2) Possession or control of any substance, device, instrument, or article designed or specially adapted for criminal use;**
> >
> > **(3) Possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use.**

Case No. 9-20-49

> **(C) Whoever violates this section is guilty of possessing criminal tools. Except as otherwise provided in this division, possessing criminal tools is a misdemeanor of the first degree. *If the circumstances indicate that the substance, device, instrument, or article involved in the offense was intended for use in the commission of a felony, possessing criminal tools is a felony of the fifth degree*.**

(Emphasis added).

{¶24} At the plea hearing, the prosecutor recited the following statement of facts supporting Lewis's guilty plea:

> **[The] State would show that on or about November 1st of 2018, through April 30th of 2019, that Jensen Lewis, at [address] in Marion County, Ohio, did purposely possess a phone device which was used for the purpose to use it criminally. It was used in recording a sexual act with a minor.**

(Nov. 6, 2020 Hrg at 22).

*R.C. 2929.13(B)(1)(b)(viii): An Offense For Hire
or as Part of an Organized Criminal Activity*

{¶25} At issue on appeal is whether the record supports the trial court's determination that Lewis committed the possession of criminal tools offense "for hire or as part of an organized criminal activity" under R.C. 2929.13(B)(1)(b)(viii), in order to invoke the trial court's discretionary authority to impose a prison term in this case. Notably, neither the term "for hire" nor the term "organized criminal activity" is defined in R.C. Chapter 2929, and trial courts must determine on a case-by-case basis if an offense is "for hire" or "as a part of an organized criminal

-15-

activity." *State v. Thompson*, 3d Dist. Allen No. 1-19-30, 2020-Ohio-723, ¶ 10.
Therefore, courts have turned to other resources to find guidance in applying these
terms.

{¶26} For instance, " '[F]or hire' is defined by the Ohio Jury Instructions as
'for pay or compensation.' " *State v. Son*, 11th Dist. Trumbull No. 98-T-0019, at *2
(Ohio Ct. App. Dec. 11, 1998), citing 4 OHIO JURY INSTRUCTIONS (1997), Section
507.24, at 200. " 'For hire' is defined in Webster's Third New International
Dictionary, Unabridged, at 1072, as follows: 'available for use or service in return
for payment.' 'Payment' is defined as: '1: the act of paying or giving
compensation.... 2: something that is paid: something given to discharge a debt or
obligation or to fulfill a promise...'." *State v. Henderson*, 2d Dist. Montgomery No.
21745, 2007-Ohio-5367, ¶¶ 29-31, citing WEBSTER'S THIRD NEW INTERNATIONAL
DICTIONARY, UNABRIDGED, at 1659 (construing the term "for hire" as stated in R.C.
2907.24(A), which sets forth the offense of solicitation, stating that "[n]o person
shall knowingly solicit another to engage in sexual activity for hire in exchange for
the person receiving anything of value from the other person," and concluding that
"the trial court could reasonably find that Henderson made a serious, if unusual,
offer to Briggs to engage in sex with him in exchange for some bubble gum").

{¶27} In determining whether there was "an organized criminal activity,"
courts have generally considered the scope and length of the criminal activity,

whether the offense was committed spontaneously/impulsively or with extensive planning, the number of people involved, and the nature of the charges. *See, e.g., State v. Orms*, 10th Dist. Franklin No. 14-AP-750, 2015-Ohio-2870; *State v. Coran*, 2d Dist. Clark No. 2003-CA-80, 2004-Ohio-6874; *State v. Miller*, 4th Dist. Washington No. 07CA1, 2008-Ohio-1059; *State v. Radcliff*, 10th Dist. Franklin Nos. 97APA08-1054 and 97APA08-1056 (Mar. 17, 1998). *See also*, *State v. Washington*, 4th Gallia No. 17CA8, 2018-Ohio-3545, ¶ 14, citing Griffin and Katz, OHIO FELONY SENTENCING LAW (1999), 368-369, Section T. 4.14.3 ("Commentators have defined an 'organized criminal activity' as 'criminal activity which because of the number of participants and planned utilization of those participants poses more of a risk to the public order than an activity carried out by a single individual acting in isolation from other offenders or than multiple individuals acting together spontaneously or impulsively."); *State v. Morgan*, 10th Dist. Franklin No. 13-AP-620, 2014-Ohio-5661, ¶ 38, (stating that "[a] defendant's participation in an aggravated robbery along with one or more co-defendants is sufficient to find the incident occurred as part of organized criminal activity").

*Discussion*

{¶28} In support of her contention on appeal that she did not commit the possession of criminal tools offense as part of an organized criminal activity, Lewis maintains that there is no evidence in the record to show that she had knowledge of

the extent of the individuals involved in the criminal enterprise other than "Junior," B.L. and B.L.'s cousin. Lewis also argues that she did not "recruit" B.L., but learned about Junior and his cash payments for nude and sexually explicit content from B.L. Lewis further contends the trial court's observation that her conduct of using a cell phone to create and broadcast live sex acts with B.L. was done "for profit" is insufficient to constitute a finding that the offense was "for hire" within in the meaning of R.C. 2929.13(B)(1)(b). However, Lewis fails to cite any instructive authority construing the term "for hire" as used in R.C. 2929.13.[4]

{¶29} We acknowledge that "there is not a bright line test for determining what is an "organized criminal activity," nor does it have a singular application. *State v. Orms*, 10th Dist. Franklin No. 14AP-750, 2015-Ohio-2870, ¶ 24. Notably, the same can be said about what constitutes an offense "for hire" under R.C. 2929.13(B)(1)(b). However, consistent with our role as an appellate court rather than as a sentencing court, we shall not reverse a trial court's decision to apply or not apply the term to an act or series of acts unless the record does not support the trial court's findings.

---

[4] For instance, Lewis cites R.C. 2929.04(A), the statute setting forth the criteria for a court to impose death or imprisonment for a capital offense, to suggest that "for hire" under R.C. 2929.13(B)(1)(b) must be construed to mean that the offender was solicited to commit the offense, not merely that the offense was committed "for profit." However, other statutory offenses, such as solicitation, also employ the term "for hire," which courts have construed to simply mean "monetary payment was expected (for hire),"and thereby have determined "for hire" to be an independent element from the act of specifically offering to engage the offense. *State v. Short*, 2d Dist. Montgomery No. 27192, 2017-Ohio-7200, at ¶ 36. Nevertheless, we decline to accept Lewis's position in this regard absent any indication from the legislature that it intended the term "for hire" as used in under R.C. 2929.13 to be applied in this limited manner.

{¶30} Here, the record demonstrates that Lewis purposefully used a cell phone to live stream and broadcast the act of her engaging in sexual conduct with a minor. The record establishes that Lewis committed this offense in exchange for money. The record further indicates that Lewis knew B.L. was 15-years-old at the time she committed the offense. Moreover, the record suggests that this was not an isolated incident, but that Lewis used a phone to live stream and send content involving her engaging in nudity and sexually explicit acts over a period of months, and that Lewis willingly did so in exchange for payment that amounted to several thousand dollars over time. Lewis was also aware that Junior had been paying a minor to engage in similar conduct prior to becoming involved with him.

{¶31} We recognize that the majority of the facts in the record are derived from the PSI and Lewis appears to take issue on appeal with the trial court's reliance on the narratives in the PSI in fashioning its sentence. It is well established that the rules of evidence do not apply to sentencing hearings. *See State v. Cook*, 83 Ohio St.3d 404, 425 (1998) (superseded by statute on other grounds). "Courts have historically been permitted to consider hearsay evidence, evidence of an offender's criminal history, the facts concerning charges dismissed, and even offenses for which charges were not filed, but were addressed in the presentence investigation." *State v. Ropp*, 3d Dist. Union No. 14-13-21, 2014-Ohio-2462, ¶ 4, citing *State v. Bowsher*, 186 Ohio App.3d 162, 2010-Ohio-951 (2d Dist.); *see*, *also*, Evid.R.

101(c)(3). Moreover, R.C. 2929.19(B)(1) permits the trial court to rely upon the contents of the PSI for purposes of sentencing. *See State v. Siefker*, 3d Dist. Putman No. 12-10-14, 2011-Ohio-1867, ¶ 20. Notably, Lewis did not object to or dispute the accuracy of the statements contained in the PSI. *See* R.C. 2951.03 (according several rights to a defendant and counsel relating to a PSI). Based on the foregoing, we conclude that the trial court did not err in relying upon this information for purposes of determining the appropriate sentence in this case.[5]

{¶32} In sum, although Lewis asserts that the record does not support the trial court's findings, the PSI reveals that Lewis directly admitted to two different people that she willingly and voluntarily involved herself with an individual who criminally solicited and distributed nude and sexually explicit materials involving minors and that Lewis purposefully used a cell phone to participate in this criminal activity for money while being fully aware of B.L.'s age. In this instance, and for the purposes of R.C. 2929.13(B)(1)(b)(viii), we believe it is inconsequential that Lewis claims that she was ignorant of the extent of Junior's involvement in a larger criminal enterprise. Accordingly, we cannot conclude that the trial court

---

[5] We note that the case cited by Lewis to assert the trial court erred in relying upon the statements in the PSI is distinguishable from this case. *See State v. Gaspareno*, 3d Dist. Marion No. 9-15-15, 2019-Ohio-990. Specifically, in *State v. Gaspareno*, we sustained the appellant's assignment of error asserting that the trial court erroneously relied upon hearsay statements contained in his *co-defendants'* PSIs to find that Gaspareno committed the underlying offense for hire or as a part of an organized criminal activity under R.C. 2929.13(B)(1)(b). We concluded that Gaspareno was not accorded the same notice and opportunity to prepare a defense to any factual inaccuracies in those PSIs as he was with the one filed *in his own case* under R.C. 2951.03. Accordingly, we do not find our analysis in *Gaspareno* germane to the instant case.

inappropriately applied the sentencing guidelines in R.C. 2929.13(B)(1)(b). Therefore, we do not find that Lewis's sentence in contrary to law. Nor on this basis can we clearly and convincingly find that the record does not support the trial court's findings under R.C. 2929.13(B).

**{¶33}** The first assignment of error is therefore overruled.

*Second Assignment of Error*

**{¶34}** In her second assignment of error, Lewis contends that the trial court abused its discretion in imposing a prison term under R.C. 2929.13(B)(1)(b). Specifically, Lewis maintains that her sentence is disproportionate to the community control sanctions imposed upon B.L.'s cousin in a separate criminal matter. Lewis asserts that the facts in that case are identical to hers. Specifically, Lewis claims that B.L.'s cousin engaged in the same conduct and pled guilty to a similar offense. Lewis argues that the only difference between the cases is that B.L.'s cousin's case was heard by a different judge who imposed a more lenient sentence. However, there is nothing properly admitted in the record of the case before us that would allow this Court to consider the particulars of B.L.'s cousin's case.

**{¶35}** Moreover, we have already determined in our resolution of the first assignment of error that Lewis has failed to demonstrate that the trial court's sentence is contrary to law and/or that its findings under R.C. 2929.13(B) are not supported by the record. Therefore, to the extent that Lewis is attempting to

challenge the trial court's consideration of the felony sentencing factors under R.C. 2929.11 and R.C. 2929.12, we note that the Supreme Court of Ohio has recently clarified that an appellate court shall no longer analyze whether a sentence is unsupported by the record under R.C. 2929.11 and 2929.12. *See*, *State v. Jones*, --- Ohio St.3d ---, 2020-Ohio-6729, ¶ 42 (concluding that an appellate court may not modify or vacate a felony sentence based upon a finding by clear and convincing evidence that the record does not support the trial court's findings under R.C. 2929.11 and R.C. 2929.12). Accordingly, we conclude that the trial court did not abuse its discretion in imposing a prison term upon Lewis.

{¶36} The second assignment of error is therefore overruled.

{¶37} For all these reasons, the first and second assignments of error are overruled and the judgment of the Marion County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/jlr**